# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Seizure of

$1,052,932.00 U.S. Currency currently in the custody of the St. Louis County Police Department.

)
)
)
)
)
)

Case No. 4:26-MJ-2048 JSD

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

**I, Salim L. Phillips, being duly sworn depose and say:**

**I am a Task Force Officer with the Drug Enforcement Administration, and have reason to believe that there is now certain property namely**

$1,052,932.00 U.S. Currency currently in the custody of the St. Louis County Police Department.

**which is**

subject to forfeiture under Title 18, United States Code, Sections 981(a)(1) and 982(a)(1), Title 21, United States Code, Sections 853 & 881(a), and Title 28, United States Code, Section 2461 and therefore, is subject to seizure under Title 18, United States Code, Section 981(b) and 982(b) and Title 21, United States Code, Sections 853(e)&(f) and 881(b) concerning a violation of Title 18, United States Code, Sections 1952, 1956 and 1957 and Title 21, United States Code, Sections 841 and 846.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

<u>SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE</u>

**Continued on the attached sheet and made a part hereof.**    __X__ Yes ____ No

**Signature of Affiant**, Task Force Officer Salim L. Phillips

**Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41**

February 5, 2026
**Date and Time Issued**

Honorable Joseph S. Dueker, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

at  St. Louis, Missouri
**City and State**

**Signature of Judicial Officer**

**AFFIDAVIT IN SUPPORT OF A SEIZURE WARRANT**

## I.      INTRODUCTION

1.      I, Salim L. Phillips, am a Police Detective with the Lambert-St. Louis International Airport Police Department. I have been employed as a police officer with the Lambert-St. Louis International Airport Police Department for 6 years. I am currently assigned to the St. Louis Division of the Drug Enforcement Administration (DEA) as a Task Force Officer and have been so for one year. As a patrol officer I have written numerous reports of investigation

2.      I am currently part of an investigative team, composed of experienced narcotics investigators involved in narcotics interdiction investigations, as well as financial investigations covering airport, bus and train, parcel packages, and highway couriers operating in violation of Title 21 United States Code, Sections 841(a)(1) and 846 (conspiracy to possess and possession with the intent to distribute controlled substances), Title 18, United States Code, Sections 1956 and 1957 (money laundering) and Title 18, United States Code, Section 1952 (interstate transport in aid of racketeering).

3.      As part of the investigation, I have relied on personal knowledge as well as other investigative sources to include reviewing reports and conversations with other investigators. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included each and every fact known to me concerning this investigation.  Rather, I have set forth herein only those facts which I believe are necessary to establish probable cause to support the warrants requested herein.

## II.     ITEMS TO BE SEIZED

4.      This affidavit is submitted in support of a seizure warrant for the following property:

a. $1,052,932.00 U.S. Currency currently in the custody of the St. Louis County Police Department.

5. The facts in this affidavit establish probable cause to believe the above described property is subject to seizure and forfeiture under both civil and criminal authorities.

III. **PROBABLE CAUSE**

6. On January 27, 2026, members assigned to DEA St. Louis Division Group 39, Interdiction Task Force were contacted by the St. Louis County Police Department, Commercial Vehicle Enforcement Unit, after a large quantity of a controlled substance and a large amount of US currency located in a semi-truck trailer. Officer James Barry (DSN) 3854 noticed a tractor and trailer drive past him with a loud sound indicating an air leak. Officer Barry performed a vehicle inspection of the tractor and trailer and activated his emergency lights. The semi-truck exited westbound I-44 at Antire Rd. The following is Officer Barry's account of the subsequent seizures detailed in his report.

7. Officer Barry approached the left side of the semi-truck to make contact with the driver, later identified as Tajinderpal SINGH, DOB 05/14/1988. Officer Barry could still hear the loud air leak near the side steps below the door. After greeting SINGH, Officer Barry began a walk-around vehicle inspection looking for vehicle defects. Officer Barry determined the air leak was the result of the air suspension bags filling with air and then back flowing towards the primary air reservoir tanks, thus hearing the loud air leak. Officer Barry returned to the driver side of the semi and noticed the curtain to sleeper compartment was closed. Officer Barry asked SINGH if he had a co-driver and SINGH stated yes. When asked if the trailer was loaded, SINGH stated the trailer was empty. Assuming SINGH previously delivered a commodity and was returning home, Officer Barry asked to see his last Bill of Lading (shipping paper) from his previous trip. SINGH

2

attempted to explain how he delivered a small load but was hard to understand due his native dialect.

8.      Officer Barry asked SINGH to provide his Electronic Log Device (ELD) and to transfer his record of duty status (RODS).  In reviewing SINGH's record of duty status on his ELD, Officer Barry noticed the driver's name was that of his co-driver, Jajvir SINGH, DOB 08/26/1993, creating a false report in connection with a duty status.  Officer Barry asked T. SINGH to open the curtain to the sleeper where he could see someone lying underneath the blanket.  T. SINGH stated he was driving under Jajvir's account because he became ill.

9.      Officer Barry resumed his inspection making his way to the rear of the trailer where he noticed a horseshoe secured to the rear of the trailer.  Officer Barry found this odd as he had never seen anything like this mounted to the trailer.  Officer Barry asked T. SINGH if he always towed this specific trailer.  T. SINGH stated yes.  T. SINGH stated the horseshoe was for good luck.  Officer Barry asked T. SINGH again if they were "empty" right now, and T. SINGH said there were a couple of wood racks holding the load.  He then stated there were just empty racks inside the trailer.

10.      Officer Barry asked for consent to see inside the trailer to get a better understanding of the commodity because he initially stated the trailer was empty and later stated there was a load in trailer.  T. SINGH said yes and voluntarily opened the right door.  Officer Barry noticed multiple shrink-wrapped pallets of boxes and several cardboard boxes on the floor on the left side of the trailer.  When asked if he had a Bill of Lading on his phone, T. SINGH stated no.  The Bill of Lading would show the origin of the load, destination, shipper information, shipment date, and the total quantity of the load.

3

11.    There were six boxes on the left side of the trailer. When asked about the boxes, T. SINGH stated he did not know what was inside the boxes which were closed and taped but not tightly sealed.  Officer Barry could see plastic vacuum sealed bags with marijuana inside the bags. Officer Barry asked T. SINGH if he could open the six boxes on the floor, and T. SINGH stated yes.

12.    Supervisor Sgt. Wilson, DSN 3488 arrived on scene, and Officer Barry advised him of the information up to this point.  Both Sgt. Wilson and Officer Barry climbed into the truck and opened all the boxes which contained plastic vacuum sealed bags with marijuana.  Sgt Wilson and Officer Barry exited the truck and placed T. SINGH in handcuffs.  Officer Barry advised T. SINGH of his Miranda Rights.  T. SINGH stated he would answer questions.  Officer Barry asked if there were any large amounts of currency inside the cab and he stated no.  Officer Barry asked what belongings he had in the cab of the truck.  T. SINGH stated, some bags.  Officer Barry asked if he would give me permission to search the cab and he stated yes.

13.    Officer Barry entered the cab of the truck and opened the sleeper curtain and advised the co-driver, J. SINGH, to wake up.  Officer Barry asked J. SINGH if he had a bill of lading, and J. SINGH stated no.  J. SINGH was asked where the load was picked up and J. SINGH stated they had just delivered it to Philadelphia and the marijuana was left over and they were instructed to bring it back.  J. SINGH was escorted to Officer Barry's truck, searched for weapons, handcuffed and verbally advised of his Miranda Rights.  J. SINGH stated he would answer any questions.

14.    During a search of the cab sleeper berth area, Officer Barry located a white in color box with U.S. Postal markings containing one vacuum sealed bag with U.S. Currency, with $63,300 written on the outside of the bag.  One black locking safe was located but there was no

4

attempt to open the safe at that time. A search of the top bunk revealed three (3) trash bags on the right side of the bed, covered with a blanket. Officer Barry removed another U.S. Postal box from one of the black trash bags, labeled "Frank" and another small black locked safe was located inside the black trash bag. Officer Barry paused his search and exited the cab. Officer Barry advised Sgt. Wilson of his findings. Officer Wilson then contacted TFO Mike Gilyon, DEA Group 39.

15.     TFO Gilyon and I arrived on scene and observed Officer Barry continue the search of the cab, which revealed 26 total bags of an unknown amount of US Currency. Packaging ranged from sealed and unsealed vacuum bags, grocery bags, plastic bags, food containers, totes, paper bags and trash bags, some packages having labels on them. TFO Gilyon and Officer Barry asked T. SINGH for consent to search the black locked safes and T. SINGH stated yes, however he did not have the key or know the combination. TFO Gilyon and Officer Barry advised T. SINGH they would need to break open the safes. T. SINGH gave consent to break open the safes. Inside both safes there was an unknown amount of US Currency.

16.     All of the packages of money, including the currency located in the safes, were removed from the sleeper berth area and placed in the cargo area of Sgt. Wilson's police truck. The packages of suspected marijuana were placed in Officer Hessling's police truck who arrived on scene to assist. All evidence was transported to the St. Louis County Police Department, 7th Precinct. Officer Barry stated, during a conversation with T. SINGH and J. SINGH, they had transported US Currency in this manner multiple times in the recent past, utilizing the same methods and route. T. SINGH stated the US Currency was given to him by Hispanic males in Philadelphia, PA. He was instructed to take it back to Los Angeles, CA.

## **SUMMARY**

5

17.    Based on the foregoing facts and circumstances, there is probable cause to believe that Tajinderpal SINGH and Javjir SINGH were engaged in narcotics trafficking in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and money laundering in violation of Title 18, United States Code, Sections 1952, 1956 and 1957, and that the above described property is subject to criminal and civil forfeiture pursuant to Title 21, United States Code, Sections 853(a) and 881(a)(6), and Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Salim L. Phillips
Task Force Officer
Drug Enforcement Administration

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 this __5th__ day of February, 2026.

HONORABLE JOSEPH S. DUEKER
United States Magistrate Judge
Eastern District of Missouri

6